[Civ. No. 15139. First Dist., Div. One. June 16, 1952.]

MARGARET MURRAY, Plaintiff and Appellant; MARTIN MURRAY, Respondent, v. SAN LEANDRO ROCK COMPANY (a Corporation) et al., Defendants and Appellants.

Popper & Burnstein and Kroninger & Zographon for Plaintiff and Appellant and for Respondent.

Ricksen, Freeman & Johnson and Stanley C. Smallwood for Defendants and Appellants.

BRAY, J.—Plaintiff Margaret Murray sued for damages for alleged personal injuries. Plaintiff Martin Murray sued for damages to his automobile. The jury found for defendants on both counts. On motions for new trial the court denied Margaret's motion and granted Martin's motion on the ground of insufficiency of the evidence. Plaintiff Margaret appeals from the judgment entered on the verdict against her. Defendants appeal from the order granting Martin a new trial.

## Question's Presented

Margaret's appeal—sufficiency of the evidence to justify the verdict.

Defendants' appeal—alleged abuse of discretion in granting new trial.

## Facts

1. On Issue of Liability.

Plaintiffs' son Keith was driving with his mother in Martin's 1936 De Soto sedan in a general westerly direction on East 14th Street in Oakland. Both Keith and his mother testified that they had turned into that street about three blocks from its intersection with 29th Avenue, and that at all times they were in the north, or right lane. Keith had slowed the car on seeing the yellow traffic light, gave a stopping signal and completely stopped as the light turned red. Both testified that they had been at a complete stop behind the pedestrian crosswalk approximately 11 seconds before defendant Lawrence, driving defendants' truck in the scope of his employment, drove it into the right rear of the car. Keith testified that he first saw the truck directly behind him as he was travelling about 20 miles per hour. He saw it next as it swerved to the left behind him. While he was stopped he heard the sound of brakes, looked in his rear window and saw defendants' truck appearing to come from the center lane and bearing down on him.

Defendant Lawrence testified on direct examination that he did not change lanes prior to the accident, and although he was looking straight ahead he did not see the automobile until he hit it. On redirect he said that plaintiffs' automobile came to his right side about 35 feet from the intersection and then turned in front of him and that was when he hit it. Police Officer Gardiner testified that Lawrence immediately after the accident stated that he had glanced off to the left for just a second, and when he looked back the car in front had stopped approximately 6 feet in front of him.

■ Thus it appears that the evidence was conflicting. If the jury believed Lawrence's story as last told (it was for the jury to reconcile that story with the one told on direct examination) there was substantial evidence to support a finding that the cause of the accident was Keith's negligence in turning in front of the truck. So far as the appeal from the judgment is concerned, the conflict in the evidence apparently having been resolved in defendants' favor, we are bound by that determination.

2. Margaret's Alleged Injuries.

But in considering Margaret's attack on the action of the trial court in denying her a new trial and yet granting her coplaintiff one, it would appear that the court believed that the evidence established defendants' liability (certainly the weight of the evidence supports that conclusion) but that the evidence failed to establish that Margaret had been injured, and that the jury's verdict was based on that theory rather than on nonliability of defendants. Therefore, we are required to consider the evidence on the implied findings of both court and jury that plaintiff received no injuries in the accident.

Lawrence testified that the car and truck moved 3 feet after the impact. The police officer estimated 6 feet. Apparently Keith claimed it went further. Margaret testified that when the truck hit, she was bracing herself and was thrown about in the car, although she struck nothing. Keith was not hurt and was not thrown around. After the impact Keith drove the car across the street. Margaret then got out and called the police from a grocery store. When the officer arrived she told him she was not injured and did not want an ambulance. Three days later she went to see Dr. Walker and Dr. Toffelmier because her spine was sore and. the skin on her back was stinging. She took 8 months off from work (salary, $200 per month). She lost weight from 160 to 138 pounds, but has gained it back. At the time of trial she was still under care for disorders in the veins and nervous system. She has pains in her scalp and the back of her head. She testified that prior to the accident, she had many of her complaints except the tingling sensation, the head pains and those in and about the veins. In 1931 she was injured in the lower spine which caused her pain occasionally right up to the time of this accident. About a year before this accident she had injured both shoulders in an accident, causing pain for about a year. Dr. Toffelmier, orthopedist, testified that when

Margaret came to him a few days after the accident she complained of pain in her back and wrists. He concluded that she had sprained her shoulder and her back region in the accident. The X rays were negative. There were no objective symptoms of injury. There were some signs of tenderness. Dr. Hudson reported to him that Margaret's complaints were ''multiple and vague and rather exotic,'' having no physical basis and primarily based upon a long-standing psychoneurosis. After consulting Dr. Hudson Dr. Toffelmier felt she should have psychiatric treatment. Six days after the accident he wrote that she had sustained a slight contusion of the left chest. On being informed that Margaret had testified that in the accident she had not struck anything he could not account for the contusion. Toffelmier testified that her trouble might have been caused by the 1931 accident, and that her posture had been poor for years. After seeing Toffelmier Margaret visited some twenty or more doctors, some of whom testified. The consensus of opinion of these doctors was that Margaret is a psychoneurotic. Dr. Barr first saw her in 1947. She then complained of pain in her low back, stiffness and soreness in fingers and wrist. He then diagnosed her condition as ''fibrocitis which is rather a catch basket of psychosomatic rheumatic complaints and sometimes added inflammatic components and with psychoneurosis with mental depression.'' Dr. Hudson, Dr. Truman, Dr. Allen, Dr. Tuchler, Dr. Gill, Dr. Nesche, all believed there had been a longstanding neurosis. Whereas Dr. Hudson and Dr. Nesche and Dr. Truman, doctors of internal medicine, testified that this accident *might* have aggravated her condition, and Dr. Tuchler, a psychiatrist, testified that the accident *did* cause a flareup, causing new signs and symptoms, on the other hand, Dr. Gill, an orthopedic specialist, believed plaintiff's complaints were solely neurotic and not based on the accident, and even Dr. Truman thought nothing in her condition was a result of any injury on June 24, 1949. The report of Dr. Adams, read into evidence without objection, indicates that this psychiatrist also believed that plaintiff's complaints were based upon a neurotic condition. The report does not express an opinion on whether or not the accident had anything to do with her complaints, such as to aggravate a prior condition. (The general tenor of this report is that the accident was more of an excuse to go to doctors for treatment; that her need to seek doctors was a neurotic one. His reasoning was that the plaintiff went to doctors to be patted and soothed

(as by her father who died when plaintiff was 7 years old—which death caused her to break out in a rash) and because she was flaunting her mother with whom she always had poor relations.) Dr. Lagen testified that in 1950, subsequent to the accident, he diagnosed the condition of plaintiff's right hand as having a lack of sympathetic control of the blood vessels which may occur as the result of emotional strain, shock, etc.; that shock attending an automobile accident if sufficient could cause the condition. Some of the other doctors disagreed with this diagnosis. Plaintiff Martin testified that Margaret had always been a nervous person, but appeared more so since the accident; that there had been some improvement in the condition of her veins. ■ While there is evidence from which the jury might have concluded that Margaret received some injury in the accident, or some additional shock to her psychoneurotic condition, there is substantial.evidence, at least (if not the weight of the evidence), to show that plaintiff was not injured in any degree in the accident and that most of her present troubles are imaginary and those which are not, were caused and existed prior to the accident. Plaintiff cites *Gamberg* v. *Industrial Acc. Com.*, 138 Cal.App. 424 [32 P.2d 413], which held that under the facts of that case there was no substantial conflict in the evidence as to plaintiff's injuries. Here, however, there was such substantial conflict. Moreover, most of the conclusions of the doctors who felt Margaret had been injured in the accident were based upon subjective symptoms as related by Margaret. Apparently neither the court nor the jury placed too much faith in her statements. There was no abuse of discretion in the denial of Margaret's motion for new trial.

## DEFENDANTS' APPEAL

Defendants contend that the test of whether a trial court has abused its discretion in granting a new trial to a plaintiff where the jury has found for the defendant is—was there substantial evidence to support a verdict for plaintiff had the jury found one? This is the settled rule in California. [3] Orders granting a new trial will not be disturbed on appeal "unless we may say that a verdict in favor of the moving party would not have found sufficient legal support in the evidence adduced at the trial." (*Empire Inv. Co.* v. *Mort,* 169 Cal. 732, 736 [147 P. 960].) In granting plaintiff Martin a new trial the trial court impliedly found that the sole proximate cause of the accident was defendants' negligence. As pointed out before, there is substantial evidence

to support that conclusion. ■ Defendants then contend there is no substantial evidence as to the money value of the damage to plaintiff's automobile. The evidence demonstrates the physical damage. The photograph of the damaged car and the testimony of Keith Murray show that the impact tore off the trailer hitch, caved in the rear trunk and back portion of the car. As to the pecuniary damage the testimony is meager. It consists solely of the following testimony by plaintiff Martin: His counsel asked him if he had received estimates for the repair of the automobile. He replied that he had received one from Peabody Motors. When asked the amount of that estimate, he answered, "about $175." Defendants' only objection to this question was that it was "incompetent, outside the scope of the pleadings." The court ruled, "I will have to overrule it on that ground." An examination of the complaint shows that the objection was not well founded, as the complaint contained proper allegations of damage to plaintiff Martin for repairs to the automobile in the sum of $179. (The fact that the repairs had not been made would not constitute a fatal variance between the complaint and the proof.) While the question was objectionable on other grounds, defendants' failure to urge them precludes their being urged now. It is apparent from the record that while the defendant used the word "incompetent" in his objection (and such objection would bar hearsay testimony) the court and counsel assumed when defendant objected "incompetent, outside the scope of the pleadings," that defendant meant that the evidence was incompetent because outside the pleadings. At the beginning of the testimony on this subject defense counsel had stated that he was going to object to testimony concerning an estimate on the ground that the complaint had alleged that the automobile had been repaired. The court obviously in stating that the objection *on that ground* was overruled, believed the objection to be so limited. In fact, when a proper objection was later made to further evidence on this point, the court promptly sustained it. If defendants intended their objection to go further than it appeared to go, they should have so informed the court.

■ "Objections to evidence must be specific and state the correct grounds of inadmissibility before complaint can be made on appeal of the trial court's ruling." (*Hatfield* v. *Levy Bros.*, 18 Cal.2d 798, 809 [117 P.2d 841].) "It may be conceded that the affidavits were incompetent to prove the facts mentioned (Code Civ. Proc., § 2009), but if such affidavits

were admitted without any objection or without proper objection, appellants may not now raise the point." (*Soares* v. *Ghisletta*, 1 Cal.App.2d 402, 404 [36 P.2d 668]; see also *Toomes* v. *Nunes*, 24 Cal.App.2d 395 [75 P.2d 94].)

Plaintiff's counsel next showed a written estimate of Peabody Motors to Martin and asked him if it was the estimate he received. He replied that it was. "Q. And that is an estimate of total cost of $174.71, is that correct?" No objection was made to this question. He replied, "That's right." Then plaintiff's counsel offered the written estimate in evidence. Defendants properly objected and the court sustained the objection. Nothing further occurred concerning the pecuniary value of the damage to the car. Summing up the evidence on this subject:—In the accident the car received physical damage which was specifically shown. Plaintiff testified that he had received an estimate of $174.71 to repair the car. Was that sufficient evidence to have supported a verdict in plaintiff's favor in that amount had the jury given it? Under the peculiar circumstances of this case we believe it was. True, as contended by defendants, there is no testimony that that sum was the reasonable value of the repairs necessarily required by the accident. The amount of the estimate could be material only if it was based on the reasonable value of the necessary repairs. In not objecting to plaintiff's testifying to the amount of the estimate defendants thereby implied that it was a properly based estimate. At least, in permitting it to get before the jury, the duty then devolved upon defendants to show that it was not a properly based estimate. "It has been held that 'incompetent evidence admitted without objection is to be regarded as sufficient to establish the fact.'" (*Seaford* v. *Smith*, 86 Cal.App.2d 339, 344 [194 P.2d 792].) The jury would have the right to infer from its admission without objection that the $174.71 was the reasonable cost of repairing the damage to the car, shown by the photograph and Keith Murray's testimony to have been caused by the accident. The jury properly could have awarded plaintiff Martin the $174.71. The court therefore acted within its discretion in granting the new trial. "The measure of damages in cases of this character is the difference in the value of the property immediately before and immediately after the injury, subject to the proviso that if the property be susceptible of repair at an expense less than such difference the measure of damages is the reasonable cost of the repairs . . ." (*Menefee* v. *Raisch Imp. Co.*, 78 Cal.App. 785,

788 [248 P. 1031].) Defendants at no time during the trial raised the question that the difference in value of the 1936 De Soto might have been less than the amount of the repair bill. ██ They offered no instruction that the jury might not award the cost of the repairs unless it appeared that such cost was less than the difference in value. The sole issue given the jury was the question of the cost of the repairs. Defendants having failed to raise the issue at the trial, cannot raise it now. ██ *Moore* v. *Levy*, 128 Cal.App. 687 [18 P.2d 362], where a judgment was reversed because the only evidence of the reasonable value of the repairs and their necessity was the testimony of the plaintiff, admitted over proper objection, as to the amount of a repair bill he had received, is not applicable here because proper objection was made to the introduction of the bill. The situation here is somewhat analogous to that in *Menefee* v. *Raisch Imp. Co., supra,* 78 Cal.App. 785, 789, where without objection the repair bill was introduced in evidence. The court said, concerning the effect of the admission of the bill: "The statement was hearsay and insufficient alone to prove the reasonable value of the repairs, their necessity, or that the time consumed in making them was reasonable [citations] . . .; but having been admitted without objection the statement therein that certain material and labor had in fact been furnished not having been contradicted, the court was justified in accepting it as evidence tending to prove the fact stated. [Citation.]"

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 16, 1952, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied August 14, 1952.