324 P.2d 862 (1958)
ESTATE of Elizabeth BENNETT, Deceased.
Lawrence L. MORFORD, Plaintiffs in Error,
v.
A.C. ELLIOTT, and A.C. Elliott, as Administrator, First M.E. Church of Tulsa, Salvation Army, Mrs. Stella Jackson, Mrs. Von Molton, Kathryn Nash, Bonnie Impey, Eula Bulger, Lena Wharton, Alice Clendenen, Defendants in Error.
No. 38003.
Supreme Court of Oklahoma.
April 15, 1958.
Oscar M. Yount, Galena, Kan. and Norman Barker, Tulsa, for plaintiff in error.
A.C. Elliott, and Carter Smith, Tulsa, for defendants in error.
*863 BLACKBIRD, Justice.
This appeal involves a contest over the admission to probate of a writing represented to be the holographic will of a Mrs. Elizabeth Bennett, who, at the age of 82, died December 18, 1956, in, and while a resident of, Tulsa, Oklahoma. As far as the record reveals the only property of which the decedent, hereinafter referred to as testatrix, died seized was her home at 710 South Quaker Street in said City, together with the household furnishings therein, a "T" Model Ford Automobile, some shares of stock, and other personal property of undisclosed value.
By the terms of the purported will, the testatrix directed that said property be sold and her "outstanding obligations" be paid. Except for the sum of $1.00 left to the testatrix' only surviving heir at law, a nephew, Lawrence L. Morford, the writing indicated that the estate was to be shared equally by "The First M E Church", Salvation Army, and seven named individual legatees, who apparently were not related to the testatrix. Among these named legatees was a Mrs. Lena Wharton, now Emanuel, at whose request, a physician we shall refer to as Dr. H, attended the testatrix in the latter part of March, 1956, and had her hospitalized from the 2nd to the 21st day of April, that year.
The purported will was written on the front and back of a sheet of the testatrix' personalized stationery. On its front side, as a letterhead, toward its top, the sheet of paper bears the testatrix' printed name and address. Above the printed letterhead, nearer the top of the sheet, the word "Will" was written in the testatrix' handwriting and underlined. Below, and to the right of the printed letterhead, also written entirely in the testatrix' handwriting, are the words and figures: "Oct. 1st-54", followed by the body of the will, which begins: "I, Elizabeth Bennett, being of sound mind * * * (etc.) * * *". Below the names of the legatees, the writing contains the words: "Atty A.C. Elliott  Administrator." The named attorney is the person who instituted the proceedings in the county court resulting in the admission to probate of the subject writing as a holographic will.
In Lawrence L. Morford's appeal from said order, to the district court, he challenged the writing as invalid on the ground of undue influence, the testatrix' alleged lack of testamentary capacity and the insufficiency of the subject writing, in form, to constitute a valid holographic will. After its de novo trial of the proceedings *864 on appeal, the district court, by its judgment, affirmed that the county court had properly admitted said writing to probate. Morford, hereinafter referred to as "Contestant", has perfected the present appeal from said judgment. The district court will hereinafter be referred to as the "trial court."
(1) By contestant's second proposition of error, he contends that the writing in question is void, as a holographic will, because it is "Partly Printing * * * Partly Writing, Improperly Dated, Indefinite and Uncertain, Irregular in Form and Contrary to Law." It is his position, in his first argument under this proposition, that, because the year appearing in its date is abbreviated, the instrument does not comply with the requirement of Tit. 84 O.S. 1951 sec. 54, that holographic wills be "entirely written, dated, and signed by the hand of the testator himself." The only authority contestant cites, as specifically supporting his argument, is the early California case of Estate of Billings, 64 Cal. 427, 1 P. 701, in which the court held invalid, as a holographic will, a "paper", in whose date ("April 1, 1880") the month and day were written in the decedent's handwriting, but the year, "1880" was entirely printed. There the court cited the section of California's Civil Code that contained the same requirements as our statute, and said, in speaking of such a writing:
"If it be partly written by him (the decedent) and partly written by another, or printed; if it be partly dated or signed by him and partly by another,  it is not a compliance with the statute. The words `April 1st' do not constitute a date,  do not show on what April 1st, the paper was written,  there being, as was suggested on the argument, many days `April 1st' in the life of any man; it was requisite that the whole date, April 1, 1880, should have been written by him in order to comply with the statute." (Emphasis ours.)
That the last quoted statement does not mean that the testatrix cannot abbreviate that part of the date designating the year, is conclusively shown by the later California case of In re Lakemeyer's Estate, 135 Cal. 28, 66 P. 961. See also, In re Moody's Estate, 118 Cal. App.2d 300, 257 P.2d 709, and particularly the citations opposite footnote 5, on page 712 of 257 P.2d thereof showing that the decision in the Lakemeyer case is in accord with the weight of authority under statutes like ours. We, therefore, hold that the testatrix' abbreviation of the year in the date of the writing here involved constituted no impediment to its admission to probate as a valid holographic will.
(2) The contestant also contends that the will was invalidated by the fact that the letterhead, consisting of the testatrix' name and address, appeared on its front, above the body and the testamentary provisions of the writing, being between said body and the word "Will", written in the testatrix' handwriting, apparently as a title for the instrument. If said letterhead were a purported part of the document, then patently it could not be said to be entirely in the handwriting of the testatrix. That is not the situation, however, and this writing is clearly distinguishable from the one involved in the case of In re Thorn's Estate, 183 Cal. 512, 192 P. 19, relied upon by contestant. There the writing involved was held insufficient as a holographic will because the name of a park, comprising part of the description of a tract of land purportedly devised therein, was not in the handwriting of the testatrix, but was inserted with a rubber stamp. We think the later California case of In re De Caccia's Estate, 205 Cal. 719, 273 P. 552, 61 A.L.R. 393, is a complete answer to contestant's argument on this point. There the printed words "Oakland, California" on the stationery used, followed by an abbreviated date in the testator's handwriting, was held not to invalidate the instrument as a holographic will. In reaching that decision, the court, among other things, held:
"Mere presence of printed matter on stationery used for purpose of writing holographic will, which forms no part of *865 written instrument, and to which no reference directly or indirectly is made, will not destroy effect of such instrument as holographic will."
See also 57 Am.Jur., "Wills", sec. 634, at Footnote 16. Here, no part of the printed letterhead is referred to either directly or indirectly in the body of the testator's will, and forms no part of it. Therefore, under the above rule, its presence on the sheet of paper, on which it was written, has nothing to do with the writing's validity as a holographic will.
(3) In one sentence of the contestant's brief, under his proposition II, it is noted that: "Neither the words `give, devise, bequeath' or `convey' or any other similar terms are used." This statement is not explained, elaborated on, or followed by any argument or citation of authority. It is therefore not clear whether it refers to the will's use of the word "direct" or whether it is contestant's view that said word is precatory (as distinguished from dispositive) or not. In this connection, notice Beakey v. Knutson, 90 Or. 574, 174 P. 1149, 177 P. 955, and 57 Am.Jur., "Wills", sec. 1180. In this situation, and, in view of the limitations upon our prerogative in reversing judgments on appeal, we will not speculate as to the significance of the quoted statement or adjudicate an argument, or contention of error, fabricated therefrom or conceivably attributable thereto. In this connection, see Mead v. Mead, Okl., 301 P.2d 691, and Railway Express Agency v. Stephens, 183 Okl. 615, 83 P.2d 858.
(4) The contestant does argue that the trial court erred in admitting the testimony of the witness, Mrs. Wharton, now Emanuel, over his objection. Here again, it is difficult to determine as to what specific testimony, or just how far, contestant's objection extends. After Mrs. Emanuel had testified, among other things, that she was the person who, after the testatrix' death, found the questioned will "in a black suitcase in her home", her testimony was concluded as follows:
"Q. How did you know it was in the black suitcase? A. She told me in case anything happened to her where to find her will.
"Mr. Barker: Object to the statement and ask that it be stricken because it pertains to a transaction had with a deceased person and this witness claims to be a beneficiary under that transaction.
"The Court: Overruled.
"Mr. Barker: Exception.
"The Court: I will give you that continuous objection to that testimony throughout without the necessity of you repeating it each time.
"Mr. Yount: Yes, and I would like to shorten that Your Honor with this, that this witness and any other witness that's named in this Will is incompetent to testify as a witness in this case.
"The Court: I will rule only as to the competency of this witness up to now and I have given you an exception to my ruling.
"Mr. Yount: Just a moment, if Your Honor please, may I query the Court, our contention is that any question asked the witness with reference to whether that is a Will is incompetent because the question of the will is the paramount issue for this Court to determine.
"The Court: I am not asking the witness to determine whether or not this is a will, I am asking counsel (?) to determine whether or not this is the handwriting of the deceased.
"Mr. Yount: That's true, but I understood counsel's question to the witness was if that was the will.
"The Court: I didn't hear that question  that question would not be a competent question, of course.
"Q. (Mr. Elliott) I will ask you if this instrument is in the same condition as it was when you found it in the black suitcase? A It is.
* * * * * *

*866 "The Court: How familiar are you with the handwriting of Elizabeth Bennett, deceased?
"Mr. Elliott: I have other witnesses  I don't think she is competent.
"The Court: All you know is this is an envelope with something inside it  was it sealed or unsealed at the time you found it? A. Unsealed.
"Q. And this instrument consisting of an envelope with some writing on the outside of it which says `The Will of Elizabeth Morford Bennett,' and an instrument inside purportedly signed by Elizabeth Bennett, those were together? A. Yes, sir.
"Q. The sheet of writing paper was in the envelope? A. Yes, sir.
"Q. And you say you found it in a black suitcase in the home of Mrs. Bennett, or in her room rather? A. Yes, sir.
"Q. What did you do with it when you found it? A. I took it over to my home and called Mr. Elliott and he came out and got it.
"Q. And you delivered it to him? A. Yes, sir." (Emphasis ours)
It will be seen from the above quoted excerpt from the record that contestant's objection, as specifically described by one of his attorneys, Mr. Yount, was to Mrs. Emanuel's competency, as a witness, to testify that the questioned writing was a will  rather than to her testimony that said paper (without regard to its name or character) was found in the testatrix' suitcase. If that is as far as his objection extended, according to his own attorney or legal representative, then, in accord with the principle which prevents a party from taking a position on appeal different from his position at the trial (Ross v. Thompson, 174 Okl. 183, 50 P.2d 385), we think he should not here be heard to change his objection and now contend that all of Mrs. Emanuel's testimony was inadmissible, or that she was generally, and for all purposes, incompetent as a witness. In this connection, see Murray v. San Leandro Rock Co., 111 Cal. App.2d 641, 245 P.2d 347, and other cases cited in the footnotes to 4 C.J.S. Appeal & Error § 253; 3 Am. Jur., "Appeal & Error", sec. 353, at footnote 12.
(5) The paper itself, entitled "Will", and undisputedly written in the testatrix' handwriting  according to the testimony of other witnesses  was introduced in evidence, and the controlling issue as to whether said writing is sufficient, in form, to constitute a valid holographic will was not a factual, but was a legal one, for the trial judge to determine. With such uncontradicted proof that the testatrix intended the writing as her will, Mrs. Emanuel's testimony that the testatrix told her where to find it, would appear to be immaterial, and/or cumulative, and not prejudicial. As to the sufficiency of the writing as a valid holographic will, the trial court's oral findings, incorporated in the record, are justified by uncontradicted evidence, exclusive of Mrs. Emanuel's testimony, and by the law properly applicable thereto. And, the record has no tendency to show that said findings and decision were in any way affected or influenced by said allegedly inadmissible testimony. We must, therefore, hold that contestant has failed in his burden to show prejudice therefrom, and that the admission of said testimony, if error, was a harmless one under the circumstances. See In re Wilkin's Estate, 199 Okl. 249, 185 P.2d 213; Mid-West Ins. Co. of Enid v. Shrader, 99 Okl. 17, 225 P. 541, and other cases cited in 2A Okl. Dig., Appeal and Error.
(6) Nor has the contestant shown that the trial court erred in its findings and judgment as regards the matters of undue influence and testamentary capacity. While the evidence shows that, in the last few months of her life, the testatrix was ill, infirm, senile and at times required medical and nursing care, there is not one iota of evidence that such condition extended retroactively back to the time she wrote the will. The evidence of her testamentary capacity at that time was all to the contrary, and the trial court, by his *867 oral findings, in effect recognized this. No specific charge is made that these findings are contrary to the evidence, but apparently on the basis of the fact that Mrs. Emanuel was in the testatrix' home when she summoned Dr. H to attend her in March, 1956, as aforesaid, and Dr. H's testimony to the effect that when he arrived there he found testatrix in an illogical and confused state of mind, that Mrs. Wharton told him she had authority to withdraw money from a Savings and Loan account testatrix had, and that, though the testatrix first refused his request that she go to the hospital, Mrs. Wharton thereafter influenced her to go, contestant's counsel charges that, according to said testimony, Mrs. Emanuel "was practically dictating affairs in" the testatrix' home. Without referring to any evidence involving the attorney, Mr. Elliott, than that showing Mrs. Emanuel apprised him by telephone of finding the Will and, on the same day, delivered it to him, counsel also interprets the evidence as showing conclusively that there was a "cable" between Mrs. Emanuel and Elliott. Counsel does not elaborate on what they mean by "cable", but we find, in the circumstances mentioned, no proof of any collusion or wrongful conduct, in any way material or relevant to the issues of this case. Nor do we find in the relationship, which the above mentioned circumstances tend to show existed between Mrs. Emanuel and the testatrix at the time Dr. H was summoned and testatrix was hospitalized, any evidence that the testatrix was unduly influenced in the provisions for testamentary disposition she made by writing the holographic will almost a year and a half before. That is the time which is material on both of the issues of testamentary capacity and undue influence. In re Martin's Estate, Okl., 261 P.2d 603, citing In re Shipman's Estate, 184 Okl. 56, 85 P.2d 317; In re Baker's Will, 207 Okl. 158, 248 P.2d 627; Toombs v. Matthesen, 206 Okl. 139, 241 P.2d 937. The record shows, and the trial court found, no evidence of facts determinative of either of these issues to bear out, or support, contestant's contentions, and the judgment of the trial court cannot be said to be clearly against the weight of the evidence. In accord with the foregoing, it is hereby affirmed.