Wilmer HARTMAN and Hilda Grae Wynne, Plaintiffs in Error,

v.

C. B. (Bob) PERDUE, Defendant in Error.

No. 39207.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Varner & Miller, Poteau, for plaintiffs in error.

Bob Perdue, pro se, Wilburton, Basil S. Null, Hartshorne, M. C. Spradling, Tulsa, for defendant in error.

JACKSON, Justice.

The question involved in this case is that of the testamentary capacity of Mrs. C. B. (Bob) Perdue (Margie Jewel Johnston Perdue) at the time she wrote her last will and testament. Her will was written in longhand on stationery bearing the printed "letterhead" of the American Cancer Society. After it had been written and signed, the will was "witnessed" by two friends of the testatrix.

It was denied admission to probate in the County Court on the grounds that it was not a valid holographic will and that it had not been properly executed as an attested will. On appeal to the District Court, it was denied admission to probate on the ground that the testatrix lacked testamentary capacity.

Although the argument in the briefs is confined for the most part to the question of testamentary capacity, we will first notice the question of whether the will presented for probate was a valid holographic will.

84 O.S.1951 § 54, provides as follows:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this State, and need not be witnessed."

The clear weight of the evidence here is to the effect that the will offered for probate was "entirely written, dated and signed" in the handwriting of Mrs. Perdue. No Oklahoma case is called to our attention

in which the effect of the later addition of the signatures of two "witnesses" is considered. However, the weight of authority is that such does not affect the validity of a holographic will. See 94 C.J.S. Wills § 205(e), wherein it is stated:

"In most jurisdictions the formalities of attestation and subscription by witnesses are not necessary to the validity of a holographic will, and the fact that an attestation clause or the names of subscribing witnesses appear on the instrument does not affect its validity, even though the attestation would be insufficient to validate a will requiring attestation * * *."

See also 57 Am.Jur. Wills, Sec. 648; 61 A.L.R. 399; In re Morrison's Estate, 55 Ariz. 504, 103 P.2d 669; In re Spies' Estate, 86 Cal.App.2d 87, 194 P.2d 83; Moyers v. Gregory, 175 Va. 230, 7 S.E.2d 881.

We therefore hold that the will here concerned is a valid holographic will.

Under the will, Mrs. Perdue's husband received very little of her estate, and the bulk of it was devised to her sister and a niece, who were named co-executrices of the will. In the courts below, the sister and niece were proponents and the husband was contestant, and they will be so referred to in this opinion.

■ The principal proposition argued by proponents on appeal is that the judgment of the trial court that Mrs. Perdue lacked testamentary capacity is against the clear weight of the evidence.

On the question of testamentary capacity, contestant relied upon the testimony of three physicians who had known Mrs. Perdue both socially and professionally. They all testified unequivocally on direct examination that Mrs. Perdue was not mentally competent to make a will. The main contention of proponents is that the testimony of these same physicians on cross-examination tended to show that Mrs. Perdue did have testamentary capacity.

The record shows that on cross-examination, counsel for proponents asked the doctors various questions embodying some of the tests of testamentary capacity as set out in In re Mason's Estate, 185 Okl. 278, 91 P.2d 657, and similar cases, and it is true that, taken alone and out of context, the answers could be construed as supporting the proposition that Mrs. Perdue did have testamentary capacity. However, after a careful examination of all of the testimony of these witnesses, and considering such testimony as a whole, we do not believe proponents' argument in this regard can be sustained. In addition to testifying that Mrs. Perdue lacked testamentary capacity at the time of making her will, all three of these physicians testified to facts in support of this conclusion.

Dr. Harris testified that she had suffered for many years from a severe skin condition consisting of a "neuro-type of dermatitis" which was of emotional origin, and that there were times "even thirty years ago when Jewel couldn't really decide fairly and intelligently".

Dr. Booth testified that the cancerous condition shown to have existed in Mrs. Perdue very often affects the mental capacity of a person. He also testified that on January 16, 1959, the day Mrs. Perdue had the will "witnessed" (though it was dated the 15th), she was "highly agitated, hysterical". He further testified that " * * * I always considered that Mrs. Perdue had a mild psychosis, and the thoughts of the oncoming operation, the disease itself, the encroachment upon the liver, all those things together brought about an aggravation of this mild psychosis, causing her to act in a way uncustomary to her".

Dr. Callahan testified, among other things, that she did not know what her property consisted of, with regard to "a new home and an old home". He also testified that Mrs. Perdue "was not rational at the time she made her will".

The deposition of Dr. Brown was introduced by proponents. Although he refused to give a direct answer to a ques-

tion as to whether she lacked testamentary capacity at the time of making the will, he testified that in January, 1959, Mrs. Perdue was "both mentally and emotionally disturbed" and that at that time her mental condition was such that "some of her actions could be questioned."

 We have carefully considered all of the testimony and evidence herein on the question of testamentary capacity, including the testimony of lay witnesses produced by proponents, and we cannot say that the holding of the trial court in this regard is clearly against the weight of the evidence. It will therefore not be disturbed on appeal. In re Anderson's Estate, 142 Okl. 197, 286 P. 17.

◼ Proponent next contends:

"The trial court erred in ruling the proponent Wilmer Hartman incompetent to testify as to communications had with the deceased, because her incompetency had been waived by the contestant's cross-examination of her, to which ruling a timely exception was made by proponents."

In this connection proponent contends that the incompetency of the witness was waived by contestant when, on cross-examination he elicited from her some testimony concerning a vacation trip she made to Colorado with the deceased and her husband.

The record shows that the cross-examination concerned consisted of questions regarding "the attitude between Mr. Perdue and his wife" and whether or not they had any difficulties or trouble in her presence. There was no testimony as to a "transaction or communication" had with Mrs. Perdue and no testimony at all as to anything Mrs. Perdue said. The witness merely testified as to what she observed.

The conversation with the deceased which the court later refused to admit in evidence took place quite some time later in Wilburton, Oklahoma. It was not connected in any way with the Colorado vacation trip.

The record therefore does not support the contention of proponents that contestant's cross-examination operated to waive his objection to the incompetency of the witness.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.

WELCH, J., concurs in result.

HALLEY, J., dissents.