2004 OK CIV APP 38

**In the Matter of the ESTATE OF Ronald Curtis SHAW, Deceased.**

**Kevin Park McKnight, Proponent/Appellant,**

**v.**

**Sherry Shaw, Contestant/Appellee.**

**No. 97,137.**

Court of Civil Appeals of Oklahoma, Division No. 2.

April 6, 2004.

John K. Harlin, Jr., Tulsa, OK, for Appellant.

Ollie W. Gresham, Tulsa, OK, for Appellee.

Opinion by JOHN F. REIF, Presiding Judge.

■ ¶ 1 This appeal concerns the trial court's refusal to admit the holographic will [1] of decedent Ronald Curtis Shaw to probate. The proponent of the will contends that the trial court erred in denying the will to probate on grounds of undue influence and lack of testamentary capacity. The proponent argues that these conclusions are contrary to the clear weight of the evidence and, in fact, unsupported by any evidence. Despite a persuasive effort by counsel for the proponent to demonstrate the merit of these arguments, we nonetheless affirm the refusal to admit the holographic will to probate.

■ ¶ 2 Probate proceedings are proceedings of equitable cognizance in which an appellate court may and will examine and weigh the evidence. *Estate of Bartlett,* 1984 OK 9, ¶ 4, 680 P.2d 369, 374 (footnotes omitted). "Once invoked in a proper proceeding, equity will administer complete relief on all issues formed by the evidence regardless of whether the pleadings specifically tendered [the issues] for resolution." *Id.* An appellate court is neither bound by the reasoning nor by the findings of the trial court, but must render, or cause to be rendered, the judgment which in its opinion the trial court should have rendered. *Id.* "If the result is correct, the judgment is not vulnerable to reversal because the wrong reason was ascribed as a basis for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact." *Id.* Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct. *Id.*

■ ¶ 3 In our examination and weighing of the evidence in this case, the issue formed by the evidence about which this court is most concerned is the proponent's alteration of each sheet of the holographic will. The proponent procured the addition of a notarial jurat to each sheet *after decedent's death* and asked the notary to back date each jurat to the date written on each sheet.[2] Obviously, the proponent believed that the will was incomplete and invalid without a contemporaneous jurat and added the jurats so he could pass the will off as a fully effective instrument.

■ ¶ 4 This addition of the jurats was an alteration of the will that was designed to deceive the court and heirs, and to illegally promote proponent's claim to the decedent's

---

1. The will consists of two sheets of lined yellow pad paper. One sheet contains a handwritten statement that is signed and dated 01–07–98, leaving decedent's mother one dollar. The other sheet contains a handwritten statement that is signed and dated 01–07–98, leaving "all my assets to Kevin Parker McKnight." Two separate written statements of the same date can constitute a holographic will. *In re Murphy's Estate,* 104 Cal. 554, 38 P. 543 (1895). By statute, multiple testamentary instruments executed by the same testator are to be taken together as one instrument. 84 O.S.2001 § 154.

2. In the decision announced from the bench, the trial court made several comments about this addition of back-dated notarial jurats after decedent's death and obviously gave this great weight in reaching the decision. However, both the decision from the bench and the order denying the will to probate were grounded on undue influence and lack of testamentary capacity, not alteration of the will.

estate. The fact that the proponent acted from a mistaken belief is immaterial to the effect that the alteration of the will had on its validity. As the Supreme Court of California has observed: "[W]e think the obvious purpose and intent of the legislature of making an holographic will ... the exclusive act of the testator, leads necessarily to the conclusion that *the slightest change by a stranger* [even] with knowledge and consent of the testator, at any time during its existence, *will completely vitiate* any instrument as *a holographic will.*" *In re Towles Estate,* 14 Cal.2d 261, 93 P.2d 555, 561 (1939) (emphasis added). We adopt and apply this rule to the instant case because the "issue as to whether [a] writing is sufficient, in form, to constitute a valid holographic will [is] not a factual, but [is] a legal one." *In re Bennett's Estate,* 1958 OK 97, ¶ 10, 324 P.2d 862, 866.

¶ 5 In holding that the addition of the back-dated jurats after decedent's death vitiated any testamentary effect of the holographic will in question, we are cognizant of the holding in *Hartman v. Perdue,* 1961 OK ——, 365 P.2d 163. There, the Oklahoma Supreme Court held that a holographic will was valid even though "the will was 'witnessed' by two friends of the testatrix." *Id.,* 365 P.2d at 164. There is a significant difference, however, between the inclusion of witness attestations from ignorance or mistake on the part of the testator, and the fraudulent addition of a false, back-dated notarial jurat that was procured by the proponent and beneficiary with the intent to deceive the court and heirs. While equity will grant relief for the mistaken addition of witness attestations by treating it as surplusage, "[t]he general rule is that where a party has participated in fraud, equity will grant such party no relief." *State ex rel. Burk v. Oklahoma City,* 1973 OK 134, ¶ 32, 522 P.2d 612, 619 (citation omitted).

¶ 6 For the foregoing reasons, the judgment denying the admission of the holographic will in question is AFFIRMED.

COLBERT, C.J., and RAPP, J., concur.